FILED
2019 Jun-07  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARITY MOORE and** | ) | |
| **LaSHAWN SMITH,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No.** |
| **vs.** | ) | |
| | ) | **JURY DEMAND** |
| **CITY OF HOMEWOOD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Come now the Plaintiffs in the above-captioned cause, by and through undersigned counsel, and brings this action under 42 USC §1983 against the City of Homewood, Alabama:

### JURISDICTION & VENUE

1.  This action is brought pursuant to, and the Court has jurisdiction over this action by and under, 28 U.S.C. §1331 (Federal Question).

2.  Both Plaintiffs reside in Jefferson County, Alabama, which is situated in this Court's jurisdiction.

3.  Defendant City of Homewood, Alabama [hereafter sometimes referred to as "Homewood"], is an incorporated municipality situated in Jefferson County, Alabama, which within this Court's jurisdiction.

1

PARTIES

4.     Plaintiff Charity Moore [hereafter:   "Plaintiff Moore," or simply "Moore"] is an adult individual over the age of nineteen (19) years of age who resides in Jefferson County, Alabama.

5.     Plaintiff LaShawn Smith [hereafter:   "Plaintiff Smith," or simply "Smith"] is an adult individual over the age of nineteen (19) years of age who resides in Jefferson County, Alabama.

6.     Defendant Homewood is a municipality incorporated under the laws of Alabama.

STATEMENT OF FACTS

.   7.     Both Plaintiffs are employed as Police Department Dispatchers by the City of Homewood.

8.     Plaintiff Moore has worked at the Homewood Police Department since around 2015.

9.     Plaintiff Smith has worked at the Homewood Police Department since around 2014.

10.     Both Plaintiffs are African American women.

*The Homewood Police Department:  A Culture of Deliberate Indifference*

11.     In late July 2015 about 100 persons participated in a candlelight vigil in Homewood's Central Park in the wake of the death of Kindra Chapman, an African American teen who had died in the Homewood City Jail. One of the vigil's organizing groups was Black Lives Matter.

12.     On or about the same day as the vigil, Homewood Police Department's [hereafter:  Homewood PD] then-Chief Jim Roberson left a voicemail for his Deputy Chief, to wit:  "This is Chief. Nobody thought to have any of the black officers come in to work. I gave them a direct order. I want 'em called, I want 'em there. I want 'em in uniform. ASAP. Make sure that gets done."

13.     Within three or four weeks of these incidents, a black Homewood PD police officer filed an Equal Employment Opportunity Commission [EEOC] race discrimination in employment claim against Homewood.

14.     The Homewood PD officer's EEOC Charge claimed he was passed-over two positions, two promotions, "despite being imminently qualified" for the promotions. In sum, the EEOC Charge alleged race discrimination was the motivating factor for the officer's being denied either promotion.

15.     Within one or two months of the EEOC Charge's filing, Chief Roberson announced his retirement from the Homewood PD.

16.    In or around December 2015, Homewood Mayor Scott McBayer recommended an internal promotion, that Tim Ross [hereafter Chief Ross], a Homewood PD officer, be promoted to Chief. McBayer said he "wanted to stay in house," to "promote from within [the Homewood PD]." The Homewood City Council approved McBayer's recommendation and Ross became Chief on January 1, 2016.

17.    In July 2016, Ross met with several black Homewood PD officers who were concerned about racial tension in the Homewood PD.

18.    One of the black officers who attended the meeting described it as just "bullshitting and cooning."

19.    The aforementioned black officer said Chief Ross promised to bring "diversity" to the Homewood PD.

20.    In the almost three years since the above-described July 2016 meeting, no diversity initiative has occurred, nor have the Homewood PD's employment policies regarding workplace race discrimination been updated.

21.    In the aforementioned meeting a white Homewood PD officer's name came up, along with his troubling racist track record, which was discussed in front of Chief Ross (who had previously been the white officer's supervisor).

22.    According to at least one black officer who attended the July 2016 meeting, the white officer being discussed had called a white off-duty Birmingham

Police officer a "nigger lover" because the Birmingham officer had an Obama bumper sticker on his car. According to the same black officer, the white Homewood PD officer discussed in front of Chief Ross once called a black Homewood PD officer "tar baby" and pointed his firearm at his fellow officer.

23.     In or around 2015 or 2016, this same white Homewood PD officer had been promoted to a leadership position. In 2018 he was honored by Homewood with the prestigious "Chief's Award."

24.     But at the July 2016 meeting, Chief Ross effectively ducked and avoided any substantive discussion of the above-mentioned white officer or his overtly racist acts.

25.     In 2017 a white Homewood PD sergeant told a fellow officer, a black officer:  "racial bias in America is all b.s. and all propaganda." The white officer's views were no a secret within the department.

26.     About a year later, in 2018, Chief Ross promoted the above-mentioned white sergeant to corporal.

27.     Over at least the past four or five years Homewood and its police department have been on actual notice of race discrimination issues within the Homewood PD, but have made a deliberate and conscious choice not to properly train and supervise its employees, its leaders and decision-makers, or to update its polices regarding work-related race discrimination.

### *Homewood's Failure to Train & Supervise its Police Force*

28.    **When** Homewood hired Plaintiff Moore in 2015, she received no specific training regarding Homewood or Homewood Police Department race (sex, national origin, disability, etc.) discrimination policies or grievance procedures.

29.    With the exception of the single, July 2016 meeting (which Moore could not attend owing to her then-pregnancy), since Moore has been employed with Homewood no classes, in-service meetings, training, or the like have been conducted by Homewood or the Homewood PD regarding Homewood PD race or other discrimination policies, grievance procedures, etc., at least none that Moore has been made aware of.

30.    When Homewood hired Plaintiff Smith in 2014, she received no training to speak of regarding Homewood or Homewood Police Department [hereafter:    Homewood PD] race (sex, national origin, disability, etc.) discrimination policies or grievance procedures.

31.    With the exception of the single, July 2016 meeting (which Moore could not attend owing to child care responsibilities), since Plaintiff Smith has been employed with Homewood, no classes, in-service meetings, training, or the like have been conducted by Homewood or the Homewood PD regarding Homewood race or other discrimination policies, grievance procedures, etc., at least none that Smith has been made aware of.

32.    Those who work at the Homewood PD have access to a 200+/- page "Policy and Procedure Manual" [Manual] but -- at least for Plaintiffs and other similarly situated Homewood employees -- there's no actual review of or training regarding this Manual, certainly not when it comes to on-the-job race discrimination.

33.    The Manual contains three (3) sentences regarding discrimination, buried in its middle.

34.    The first two (2) sentences are boilerplate, *pro forma*, with one of them (awkwardly) claiming the Homewood PD's policy is ". . .to provide equal opportunity in employment for all persons to prohibit discrimination because of race, color, religion, sex, national origin, handicap, age or sexual orientation."

35.    The Manual's last sentence says if an employee believes they've been discriminated against, they should look (a) *elsewhere* in the Manual for instructions on filing a grievance, (b) and look in the City of Homewood Employee Handbook (which neither Plaintiff ever received a copy of), and, (c) look in the "Personnel Board of Jefferson County Rules and Regulations" (which neither Plaintiff ever received a copy of or instructions on how to access).

36.    Notwithstanding -- or perhaps owing to -- Homewood and its police department being on actual notice of Homewood PD race discrimination in employment issues, the difficult and byzantine race discrimination reporting

7

procedures (such as they are), along with the lip-service-only anti-discrimination policy, reflect the Homewood's deliberate indifference to the rights of its employees as regards workplace discrimination; utter disregard for workplace equality; and Homewood's brazen neglect for upholding and adhering to U.S. anti-discrimination laws.

37.    It's Plaintiffs' understanding and belief that no Homewood PD supervisors receive any training on carrying out the Manual's "policy," scant as it is, regarding on-the-job discrimination. This also constitutes Homewood's deliberate indifference to those laws which prohibit workplace discrimination and demonstrates Homewood's failure or refusal to train and supervise those who work at its police department.

38.    Regarding the Manual, and for comparison, Plaintiffs note its section on ""Visible Tattoos, Body Piercing Artifacts and Branding Standards" is longer and more detailed than the section on "Discrimination/Diversity."

39.    The Manual's section on "Recording Police Department Members" is at least *3 times* longer and detailed than the "Discrimination/Diversity" section.

40.    The Manual's section on "Wear of Awards and Medals" (with subsections A through E) covers one-and-a-half full pages, compared to the 3-sentence policy on "Discrimination/Diversity."

41.    The foregoing paragraphs 28-40 help illustrate Homewood's and  its

police department's deliberate indifference to maintaining a workplace free from race-based (and any other) discrimination, as well as Homewood's failure to train and supervise Homewood PD supervisors and other decision-makers to address and prohibit race discrimination.

42.     Additionally, the foregoing paragraphs 28-40 help illustrate how Homewood PD supervisors are effectively encouraged to brush-off or otherwise ignore any reports or complaints made by subordinates regarding on-the-job discrimination.

43.     Additionally, the foregoing paragraphs 28-40 help illustrate how Homewood makes virtually no effort to provide employees clear-cut guidelines for reporting on-the-job race (and other) discrimination, or provide employees a clear-cut idea of how reported race (and other) discrimination reports or complaints will be investigated and otherwise handled within the Homewood PD chain of command. And this contributes to discouraging reporting on-the-job race discrimination.

44.     Homewood and its police department see a need to spell-out clear-cut policies and guidelines in excruciating detail as regards employee tattoos and body piercing, for recording police officers, for wearing awards and medals, but *not* regarding workplace race or other discrimination; again helping demonstrate Homewood's deliberate indifference to its African American and other employees

9

as regards race and other workplace discrimination.

### Plaintiff Charity Moore

45.     Around February 11, 2019, Plaintiff Moore developed back pain so excruciating she went to and checked-into the Emergency Room. She was diagnosed with a tumor in the lower paraspinal process, extending from the L1-L4 vertebrae.

46.     On or about February 12, Moore's doctor provided her an excuse, which Moore in turn provided to her supervisor, Steve Sparks.

47.     Steve Sparks is white.

48.     Steve Sparks telephoned Moore and told her if she did not further explain the doctor's excuse he would not accept it (and, thus, Moore would be subject to disciplinary action).

49.     Moore's similarly situated, white co-workers are not subjected to such additional scrutiny or threats by Steve Sparks.

50.     Moore followed-up with her primary care physician, and on or about February 14 submitted additional information, as well as Family Medical Leave Act [FMLA] paperwork to Steve Sparks.

51.    In a February 15, 2019, telephone conversation with Lt. Keith Peterson (who is white), Moore noted and questioned the double standards between herself and her white co-workers.

52.    Lt. Peterson did not deny the race-based double standard alleged by Plaintiff Moore.

53.    Lt. Peterson told Moore he would, "Look into it," or words to that effect. To date, almost four (4) months later,  Moore has not heard back from Lt. Peterson regarding her complaint. Lt. Peterson effectively ignored Moore's complaint of race discrimination in the Homewood PD.

54.    The foregoing demonstrates, but is not exhaustive of the evidence of, Homewood failing or refusing to adequately train and supervise its police officers and others working at its police department regarding employment -- notably race-based -- discrimination laws, policies, procedures, protocols and the like.

55.    Since February 2019, regarding time-off from work, Supervisor Steve Sparks has subjected Moore to heightened, onerous scrutiny compared to her white co-workers.

56.    Since February 2019, regarding reasonable accommodations under the Americans with Disabilities Act [ADA] and the FMLA, Supervisor Steve Sparks has subjected Moore to heightened, onerous scrutiny compared to her white co-workers.

11

57.     Steve Sparks' aforementioned acts and omissions constitute race-based double standards between white and black Homewood employees and retaliation against Moore for exercising her FMLA and ADA rights.

58.     After Moore put Steve Sparks and Lt. Peterson on actual notice of her health situation, Sparks and/or other Homewood PD supervisors required Moore to to undergo a "Fit For Duty" assessment when her white co-workers (co-workers who in the same time frame have experienced their own health issues, from pregnancy to elective surgery) have not. This also demonstrates Homewood PD race-based double-standards and discrimination in how it treats its employees.

59.     During the aforementioned "Fit For Duty" assessment, no imaging, no urinalysis, was performed. Plaintiff Moore offered to provide her medical records to the doctor, he declined. The Fit For Duty assessment was mere harassment and/or retaliation for Moore exercising her rights under the FMLA and/or otherwise ordered in bad faith and for race-based discriminatory purposes.

60.     On or about Monday, April 29, 2019, Steve Sparks told Moore she would have to work additional days, beyond what her doctor-prescribed limitations were. Moore told Sparks she could not do this without first checking with her doctor about exceeding such limitations. Within 72-hours of this conversation Moore was subjected to her first drug test since she began work as a Homewood PD dispatcher.

61.    The drug-test (which Moore passed) was not random. It was retaliation for Moore exercising her rights under the Americans with Disabilities Act and the FMLA. Moore's white co-workers are not subjected to such treatment or retaliation.

62.    On or about May 3, 2019, in an email to Steve Sparks, Moore once again put Homewood on actual notice of her contention that a race-based double standard existed in the Homewood PD regarding Moore and her white co-workers. Steve Sparks never acknowledged this complaint; neither did he pledge to pass it up the chain of command for investigation. Steve Sparks did not refer Moore to any alternate grievance policy or procedure. Like Lt. Peterson, Steve Sparks ignored Moore's complaint of racism within the Homewood PD.

63.    Homewood, by and through its agents, has proximately caused Plaintiff to suffer pain, *exacerbated* pain, stress, emotional hardship, anxiety, and humiliation, owing to Homewood PD's race-based double-standard in how black and white employees are treated, specifically, when it comes to FMLA, disabilities, health and time-off from work issues.

**Plaintiff LaShawn Smith**

64.    It is not unusual for the Homewood PD's white dispatchers to "go home sick," to not complete their shifts, to tell Dispatch Supervisor Steve Sparks

that they need to "leave early."

65.     Plaintiff Smith has yet to see Steve Sparks make a fuss about or have a problem with such things, about such requests, from Smith's white co-workers.

66.     In or around mid-February 2019, Smith contacted Steve Sparks, told him she needed to be relieved, to go home early, owing to her feeling ill. Sparks refused Smith's request.

67.     Steve Sparks' refusal was beyond frustrating to Smith:  She had over and over again seen Sparks accommodate white dispatchers' requests to leave work early, to not complete their shifts.

68.     Plaintiff Smith began experiencing what to her felt like a panic attack. The feeling was awful, like she was dying or at the least would soon pass out.

69.     Getting no help or accommodation from Steve Sparks, Smith called Homewood's Employee Assistance Program [EAP] and asked what she could do.

70.     EAP told Smith to get to the Emergency Room. Smith called Sparks again and told him EAP had told her to get to the Emergency Room. Sparks responded, "I'm on my way."

71.     Before Smith could gather up her things to leave, an armed guard -- Homewood Police Officers -- came to the dispatch room to "escort" Smith off Homewood City property.

72.     On top of the physical and emotional trauma of her panic attack -- the

shortness of breath, the dizziness, the anxiety, the fear -- the experience of being escorted off-property felt humiliating and shaming to Smith.

73.    Plaintiff Smith got to a nearby "Urgent Care" or similar private clinic and where a doctor or other health care professional confirmed she had and/or was experiencing a panic attack.

74.    White dispatchers are *never* treated this way by Steve Sparks or other Homewood PD officials.

75.    Plaintiff Smith's aforementioned experience constitutes a race-based double standard in treatment by Homewood, by and through its police department.

### *42 U.S.C. §1983 and the Fourteenth Amendment*

76.    By this reference Plaintiffs incorporate into this paragraph the above allegations regarding:  *(a)* Homewood's deliberate indifference to the rights of Homewood PD employees in general (and employees of color in particular); and, *(b)* Homewood's failure to train and supervise its police department regarding race discrimination (including its failure or refusal to draft and adopt adequate written policies). Plaintiffs also incorporate into this paragraph their respective allegations describing Homewood and its police department's adverse actions, race-based double standards, perpetrated against them.

77.    Homewood violated Title 42 U.S.C. §1983, which prohibits state

actors from discriminating against employees in the terms and conditions of their employment based on race.

78. Race was a motivating factor, moving force, and/or otherwise influenced the employment decisions, and/or otherwise made a difference in the decisions made regarding Plaintiffs by Steve Sparks, all of which were adopted and ratified by Sparks' superiors, Homewood and the Homewood PD.

79. Homewood knew of a need to train and/or supervise its police department's officers, supervisors, commanders regarding employment race discrimination, but made a deliberate choice not to take any action, which proximately caused the workplace race discrimination set forth in this complaint.

80. Steve Sparks with the blessing and endorsement of his superiors, intentionally discriminated against Plaintiffs under color of law because of their race, African American, in violation of their constitutional rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

81. Steve Sparks' supervisors and superiors, including Lt. Peterson, Chief Ross and the City of Homewood, ratified and adopted Sparks' various race-based decisions, acts and omissions set forth in this complaint *in passim*.

## COUNT I

### Plaintiff Charity Moore

### Violation(s) of Civil Rights Under Color of Law -- General

82.    By this reference Plaintiff Charity Moore reiterates and incorporates all allegations set forth in preceding paragraphs, as if fully set forth herein.

83.    Homewood violated Plaintiff Moore's civil rights under color of law in its treatment, its acts and omissions, towards her in the terms and conditions of her work based on race.

84.    Homewood's violations of Moore's civil rights under color of law proximately caused her to suffer the aforementioned physical and emotional damages.

## COUNT II

### Plaintiff Charity Moore

### Violation of Civil Rights Under Color of Law -- Retaliation

85.    By this reference Plaintiff Charity Moore reiterates and incorporates all allegations set forth in preceding paragraphs, as if fully set forth herein.

86.    Homewood violated Plaintiff Moore's civil rights under color of law by retaliating against her for exercising her rights under the FMLA and ADA and attempting to exercise the same workplace rights enjoyed by her white co-workers.

87.    Homewood's violations of Moore's civil rights under color of law --
retaliation -- proximately caused her to suffer the aforementioned physical and
emotional damages.

## COUNT III

### Plaintiff LaShawn Smith

### Violation(s) of Civil Rights Under Color of Law -- General

88.    By this reference Plaintiff LaShawn Smith reiterates and incorporates
all allegations set forth in preceding paragraphs, as if fully set forth herein.

89.    Homewood violated Plaintiff Smith's civil rights under color of law in
its treatment, its acts and omissions, towards her in the terms and conditions of her
work based on race.

90.    Homewood's violations of Smith's civil rights under color of law
proximately caused her to suffer the aforementioned physical and emotional
damages.

## COUNT IV

### Plaintiff LaShawn Smith

### Violation of Civil Rights Under Color of Law -- Retaliation

91.    By this reference Plaintiff LaShawn Smith reiterates and incorporates
all allegations set forth in preceding paragraphs, as if fully set forth herein.

92.     Homewood violated Plaintiff Smith's civil rights under color of law by retaliating against her for attempting to ask for the same or similar workplace treatment as that enjoyed by her white co-workers.

93.     Homewood's violations of Smith's civil rights under color of law -- retaliation -- proximately caused her to suffer the aforementioned physical and emotional damages.

REQUESTS FOR RELIEF

**A.**     Following trial by jury, **Plaintiff Charity Moore** respectfully requests the Court enter judgment in her favor in an amount to be determined by jury:

1.     Against Defendant Homewood for compensatory damages under Count I.

2.     Against Defendant Homewood for compensatory damages under Count II.

3.     Against Defendant Homewood for reasonable costs and attorneys fees.

4.     Any other relief in law or equity the Court deems appropriate to grant.

**B.**     Following trial by jury, **Plaintiff LaShawn Smith** respectfully requests the Court enter judgment in her favor in an amount to be determined by jury:

1.     Against Defendant Homewood for compensatory damages under Count III.

2.     Against Defendant Homewood for compensatory damages under Count IV.

3.     Against Defendant Homewood for reasonable costs and attorneys fees.

4.     Any other relief in law or equity the Court deems appropriate to grant.

**C.**     Following trial by jury, both **Plaintiffs Moore and Smith** respectfully requests injunctive relief, to wit:

1.     That the Court enter an Order requiring Homewood undertake those steps necessary (e.g., overhauling and updating its workplace discrimination policies and procedures, providing *substantive*, annual training of all Homewood PD employees, etc.) to undo the deliberate indifference and training & supervisory failures that are endemic to the Homewood Police Department.

2.     Against Defendant Homewood for reasonable costs and attorneys fees.

3.      Any other relief in law or equity the Court deems appropriate to

grant.

Respectfully filed and served on this, the 7th day of June, 2019.


Richard R. Newton  (NEW032)
Attorney for Plaintiffs Charity Moore
  and LaShawn Smith
1203 Regal Avenue
Birmingham, AL  35213
Tel:  205.356.2498
Email:  richardrussellnewton@gmail.com
ASB 0776-W85R



DEFENDANT CITY OF HOMEWOOD, ALABAMA, SERVED BY PROCESS
SERVER AT:

        City of Homewood
        City Hall
        2850 19th Street South
        Homewood, AL  35209


Richard R. Newton  (NEW032)
Attorney for Plaintiffs